[Cite as *State v. West*, 2016-Ohio-7864.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-858 |
| v. | : | (C.P.C. No. 09CR-7672) |
| Jamal West, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 22, 2016

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Sheryl L. Prichard,* for appellee.

**On brief:** *Stephen Dehnart,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1}  Defendant-appellant, Jamal West , appeals from a judgment of the Franklin County Court of Common Pleas which denied appellant's April 1, 2015 motion to withdraw his guilty plea.  For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}  Much of the underlying history prior to appellant's second attempt to withdraw his guilty plea is contained in this court's prior decision in *State v. West*, 10th Dist. No. 11AP-548, 2012-Ohio-2078.  In *West,* we rejected appellant's claim on direct appeal and affirmed the trial court's denial of his first motion to withdraw his guilty plea.[1]  We cite from our prior decision to the extent that it is relevant to this appeal.

---

[1]His application for reopening was also denied by this court. *State v. West*, 10th Dist. No. 11AP-548, 2013-Ohio-942. The Supreme Court of Ohio declined review. *State v. West*, 136 Ohio St.3d 1451, 2013-Ohio-3210.

{¶ 3} On December 23, 2009, an eleven-count indictment was filed against appellant for charges involving aggravated burglary, kidnapping, aggravated robbery, gross sexual imposition, rape, and possession of criminal tools. Ten of the eleven counts also included firearm specifications. All of the crimes were alleged to have occurred on September 28, 2008, out of a single incident during a home invasion which involved a violent burglary, robbery, and sexual assault of the female victim. *West* at ¶ 2.

{¶ 4} DNA specimens were recovered from the scene and sent to the Columbus Police ("CPD") Crime Laboratory for analysis. On November 10, 2008, the lab rendered its first report. One swab taken from a hammer (sample "A2.1") was entered into the Combined DNA Index System ("CODIS") and two others taken from knives (samples "A1.1" and "A6.1") were deemed unsuitable for CODIS analysis but were retained for further use. On August 24, 2009, a CODIS search or "hit" identified appellant as a possible contributor to the hammer swab (sample "A2.1"). On September 3, 2009, pursuant to a search warrant, detectives obtained an oral swab from appellant. On October 27, 2009, the lab concluded that appellant could not be excluded as a contributor to the hammer swab (sample "A2.1"). On April 1, 2010, the lab concluded that appellant could not be excluded as a contributor to a knife swab (sample "A1.1"). He was excluded as a contributor to the other knife swab (sample "A6.1").

{¶ 5} At arraignment, the Franklin County Public Defender's office was appointed to represent appellant, and attorney Mahlon Nowland was assigned to the case. Later, attorneys Christopher Cooper and Crysta Pennington were hired to represent him. The evidence shows that all of appellant's counsel at this stage believed that the DNA evidence was "strong" and they so advised appellant.

{¶ 6} On May 9, 2011, a plea hearing was held and appellant entered a plea of guilty to one count of aggravated burglary, one count of aggravated robbery with a three-year firearm specification, and one count of rape. During the plea hearing, the trial court personally addressed appellant and discussed the consequences of appellant changing his not guilty pleas to guilty pleas, as well as informing appellant the rights he would be giving up by pleading guilty. *West* at ¶ 4-5. Also, at this hearing, appellant admitted that he broke into the victims' occupied property without permission while using a deadly weapon and attempted to inflict physical harm with the intent to commit a robbery.

Appellant also admitted to being an aider and abettor to a rape. (May 9, 2011 Tr. at 10-17.) Finally, the trial court determined appellant was making the pleas knowingly, voluntarily, and intelligently with full understanding of the nature of the charges; the maximum penalty involved; the effect of the plea; and the mandatory prison term at issue as a result of the firearm specification. *West* at ¶ 4-5.

{¶ 7}   Following this colloquy, the trial court accepted appellant's pleas. The remaining eight counts were dismissed. The trial court then requested a pre-sentence investigation ("PSI") report and scheduled a sentencing hearing for May 25, 2011. *Id.* at ¶ 6. Appellant was interviewed by the PSI writers on May 16, 2011, and admitted to being at the crime scene looking for valuable items to steal and possessing a hammer during the course of the crime, and generally describing the events consistently with the victims, though he tried to deny or minimize his involvement. (PSI report at 5-6.)

{¶ 8}   On May 20, 2011, appellant, through counsel, filed a motion to withdraw his guilty plea pursuant to Crim.R. 32.1. Appellant's motion stated, in relevant part, "after giving much thought to the facts of the case, including grasping a better understanding of DNA/forensic science, decided that he did not want to proceed with sentencing, and, in the alternative, would like to proceed with trial." *West* at ¶ 7.

{¶ 9}   On May 25, 2011, the trial court conducted an oral hearing to address the motion to withdraw the guilty plea. Appellant believed that because the report concluded that he could not be excluded as a contributor, rather than stating he was included as a contributor, the evidence was actually favorable to him and, therefore, he wanted to go to trial on the matter. *Id.* at ¶ 8.

{¶ 10} Attorney Cooper, lead trial counsel for appellant at the time of the hearing, asserted that he had explained to appellant that the probability of another person's DNA being a match to the DNA found on the hammer was extremely unlikely, and that the results of the DNA analysis essentially meant appellant was included as a contributor to the DNA located on the hammer. *Id.* at ¶ 9. Appellant's original trial counsel, Attorney Nowland, confirmed he clearly explained to appellant that there was no question that if the jury believed the DNA evidence, they would believe the DNA on the hammer belonged to him. Attorney Nowland described the DNA evidence on the hammer as "very strong evidence." *Id.* at ¶ 11.

{¶ 11}  Following the hearing, the trial court overruled appellant's motion to withdraw guilty plea and proceeded to sentencing. Appellant received a sentence of 10 years as to each of the 3 counts, which were ordered to run consecutively, plus 3 years for the firearm specification, for a total sentence of 33 years. *Id.* at ¶ 12.

{¶ 12}  On June 22, 2011, appellant filed a timely appeal with this court in which he asserted a single assignment of error: "The Trial Court erred in refusing to allow the Defendant to withdraw his plea[.]" *Id.* at ¶ 13.

{¶ 13}  In the appeal, appellant asserted that he filed the motion to withdraw guilty plea because he did not understand the DNA testimony in this case as it applied to him, and after learning more about DNA, he believed he had a valid defense. Although not specifically stated, appellant asserted that his plea was not knowing, intelligent, and voluntary. *Id.* at ¶ 19.

{¶ 14}  This court rejected these arguments and stated:

> [A]ppellant admitted at the plea hearing and to the PSI writer what his role was in these crimes. Appellant admitted to breaking into the residence and searching for valuables and to assisting in robbing the victims of cash. Although appellant denied physically raping the female victim, he acknowledged that he did not stop his co-defendant(s) from raping the female victim. The evidence linking appellant to these crimes is significant.

*Id.* at ¶ 29. The court held that "[b]ecause we find no abuse of discretion on the part of the Franklin County Court of Common Pleas in making its ruling denying the motion to withdraw guilty plea, its decision must be affirmed." *Id.* at ¶ 31.

{¶ 15}  Over two years later, on August 29, 2014, the CPD Laboratory issued an additional report "[a]s a result of changes in interpretation and reporting guidelines." The additional report stated, in relevant part, that no interpretable DNA profiles were previously obtained from the knife swab (sample "A1.1").  Further, the partial DNA profile previously obtained from the hammer swab (sample "A2.1") is consistent with a mixture of at least two individuals. Due to the limited data obtained, no interpretations will be made for this profile. The report concluded that the partial DNA profile obtained from the hammer swab (sample "A2.1") was determined to be unsuitable for entry into CODIS and was removed.

{¶ 16} On April 1, 2015, pursuant to Crim.R. 32.1, appellant moved the trial court "to permit him to withdraw his previously entered plea of guilty in this matter." Appellant argued that the crime lab CODIS "hit" should have never happened and that appellant should never have been a suspect. Second, the crime lab has now admitted that its conclusion that appellant could not be excluded as a contributor to hammer swab (sample "A2.1") was in error. Furthermore, appellant relied heavily on the erroneous DNA evidence in deciding to plead guilty. As a result, he argued that this is a manifest injustice and this court should grant appropriate relief. (Apr. 1, 2015 Mot. of Def. to Withdraw Plea at 3.)

{¶ 17} The state argued that appellant bases his current motion on a change in reporting, and that the DNA results have not changed. The fact that the crime lab is now not interpreting the data does not mean the data has changed, but only the way in which the crime lab now reports this data has changed. Elizabeth Benzinger, Ph.D., Director of Research, Development and Training at the Ohio Bureau of Criminal Identification and Investigation reviewed the data and found that the samples were all satisfactory, the testing procedure was functioning, and the DNA is "interpretable and represents a mixture from at least two people." (Benzinger Aff. at ¶ 1-5.) Benzinger also found that the "profile is suitable for entry into the CODIS database." (Benzinger Aff. at ¶ 6.) In light of this, "[n]either [the male victim] nor Jamal West can be excluded as contributors to the profile." (Benzinger Aff. at ¶ 7.) Benzinger also found that "the expected proportion of the population that cannot be eliminated as possible contributors to the mixed DNA profile from the hammer is 1 in 223,000 unrelated individuals." (Benzinger Aff. at ¶ 8.) The state argued that this information was completely consistent with the initial DNA report prepared by the CPD Crime Lab. (May 22, 2015 Memo. Contra at 3.)

{¶ 18} The state also argued that appellant's guilt as a complicitor is clear based on his own statements at the plea hearing and to the PSI writer. As this court said in the first appeal:

> Appellant admitted to breaking into the residence and searching for valuables and to assisting in robbing the victims of cash. Although appellant denied physically raping the female victim, he acknowledged that he did not stop his co-defendant(s) from raping the female victim.

*West* at ¶ 29. In addition, we noted that:

> Attorney Nowland admitted that during plea discussions in February and March 2011, appellant took the position he had been present during the crime, but he had only watched the rape and failed to stop it. Thus, appellant had claimed he was not guilty of physically committing the rape, but he did not dispute the DNA evidence or results at that time.

*Id.* at ¶ 23.

{¶ 19} On August 18, 2015, the trial court commenced a hearing on appellant's motion to withdraw guilty plea. The state argued that the court "lacks jurisdiction to withdraw the guilty pleas because the Court of Appeals has already affirmed a prior denial of a motion to withdraw guilty plea" and, "secondarily, it's obviously re[s] judicata for the same reason because he has already raised this and the Court has already decided this issue." (Aug. 18, 2015 Tr. at 3-4.)

{¶ 20} The court heard arguments from counsel, reviewed the documents and case law submitted by the state, and then found and stated on the record, in relevant part:

> After looking at some of the case law and some of the arguments counsel made, I don't believe this Court has jurisdiction to proceed with the * * * motion to withdraw the post-sentence guilty plea. I think under Special Prosecutors and -- out of the Supreme Court and Ikharo under the Tenth District this Court doesn't have jurisdiction because there's been no remand from the Tenth District.
>
> I also think upon review of some of the arguments counsel made, both in writing and here in open court, and a review of some of the exhibits the State submitted there has been no manifest of injustice under Smith; so the Court is not going to proceed with a hearing or taking any further testimony.

(Aug. 18, 2015 Tr. at 14-15.)

{¶ 21} The trial court's entry of the same date states, "[u]pon review, and for all the reasons stated on the record on August 18, 2015, the Court lacks jurisdiction to hold a hearing on the motion, and notes no manifest injustice has occurred." (Entry at 1.)

## II. ASSIGNMENT OF ERROR

{¶ 22} Appellant appeals, assigning the following error:

> The trial court erred in finding it was without jurisdiction to hear appellant's motion to withdraw his guilty plea finding that there were no issues to be litigated therefore finding appellant's issues regarding new DNA evidence were res judicata.

## III. DISCUSSION

{¶ 23} A trial court's decision denying a post-sentence motion to withdraw guilty plea is subject to an abuse of discretion standard of review. *State v. Conteh*, 10th Dist. No. 09AP-490, 2009-Ohio-6780, ¶ 16. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, in reviewing a determination of subject-matter jurisdiction, we employ a de novo standard of review as that determination is a question of law. *Slaughter v. Slaughter,* 10th Dist. No. 11AP-997, 2012-Ohio-3973, ¶ 14, citing *Kingsley v. Ohio State Personnel Bd. of Rev.*, 10th Dist. No. 10AP-875, 2011-Ohio-2227, ¶ 27.

{¶ 24} Crim.R. 32.1 states that "a motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Although no precise definition of "manifest injustice" exists, in general, "manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Wooden*, 10th Dist. No. 03AP-368, 2004-Ohio-588, ¶ 10. " '[U]nder such a standard, a post-sentence withdrawal motion is allowed only in extraordinary cases.' " *State v. Orris*, 10th Dist. No. 07AP-390, 2007-Ohio-6499, ¶ 7, quoting *State v. Smith*, 49 Ohio St.2d 261, 264 (1977).

{¶ 25} Appellant argues that the state has long maintained that appellant's current claim is barred by res judicata. Appellant argues that the trial court's reliance on *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94 (1978) ("*Special Prosecutors*") and *State v. Ikharo*, 10th Dist. No. 05AP-167, 2005-Ohio-6616 (*"Ikharo II"*) and/or *State v. Ikharo*, 10th Dist. No. 10AP-967, 2011-Ohio-2746 (*"Ikharo III"*) in this context is misplaced. Appellant argues that while *Special Prosecutors* and *Ikharo II* do not specifically address new evidence, *Ikharo III* is clear that res judicata is a

bar only to the court hearing claims based on the same evidence and/or issues that could have been previously raised. Clearly any arguments based on this new report could not have been raised previously.

{¶ 26} The state argues that appellant's motion to withdraw guilty plea suffers from both procedural and substantive flaws. First, this court has already affirmed appellant's plea and conviction in his previous appeal, so the trial court lacks jurisdiction to withdraw his guilty pleas. Second, appellant's arguments are all barred by res judicata, because his arguments were already raised in his previous motion to withdraw guilty plea. Finally, defendant's arguments fail on their merits and there is no manifest injustice under Crim.R. 32.1.

{¶ 27} As a threshold matter, we note that the trial court specifically held that it "lacks jurisdiction" to hold a hearing on the motion to withdraw guilty plea. (Aug. 18, 2015 Entry at 1.) We agree. The Supreme Court of Ohio in *Special Prosecutors* at 97-98, stated:

> Crim. R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea *subsequent to an appeal and an affirmance by the appellate court.* While Crim. R. 32.1 apparently enlarges the power of the trial court over its judgments without respect to the running of the court term, it does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court, for this action would affect the decision of the reviewing court, which is not within the power of the trial court to do. Thus, we find a *total and complete want of jurisdiction* by the trial court to grant the motion to withdraw appellee's plea of guilty and to proceed with a new trial.

(Emphasis added.) *See also State v. Ketterer*, 126 Ohio St.3d 488, 2010-Ohio-3831, ¶ 61-62 (trial court lacked jurisdiction to consider motion to withdraw guilty plea, because convictions had been affirmed and case remanded for limited purposes of resentencing on non-capital offenses); *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, ¶ 33 (trial court lacked jurisdiction to grant relief from judgment after conviction had been affirmed); and *State v. Andrioff*, 10th Dist. No. 84AP-502 (Mar. 7, 1985) (the trial court does not regain jurisdiction over matters subject to the appeal in the absence of a reversal and remand by the appellate court, citing *Special Prosecutors.*).

{¶ 28} The rule in *Special Prosecutors* is related to the law-of-the-case doctrine, which states generally that "an inferior court has no discretion to disregard the mandate

of a superior court in a prior appeal in the same case." *Nolan v. Nolan*, 11 Ohio St.3d 1 (1984), syllabus, following *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32 (1979). Just as a trial court may not ignore an appellate court's mandate, nor can it "extend or vary the mandate given." *Nolan* at 4. The law-of-the-case doctrine thus preserves the structure of superior and inferior courts as designed by the Ohio Constitution. *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, ¶ 15.

{¶ 29} In the present case, appellant appealed the trial court's first denial of his motion to withdraw guilty plea.  This court construed his appeal as arguing that his guilty plea was not knowingly, intelligently, and voluntarily undertaken, and that he did not receive a full hearing pursuant to Crim.R. 11.  *West* at ¶ 19.   This court rejected those arguments, finding no abuse of discretion and affirmed the trial court.   *West* at ¶ 29.  Because we found that the plea was knowingly, intelligently, and voluntarily entered into and affirmed the trial court's denial of the previous motion to withdraw guilty pleas, *Special Prosecutors* prohibits the trial court from allowing appellant from withdrawing his guilty pleas.  Therefore, we affirm the trial court's ruling that it lacked jurisdiction.

{¶ 30} Having found that the trial court lacked jurisdiction, the arguments regarding res judicata and manifest injustice become effectively moot.  However, we note that the trial court did not directly address the issue of res judicata.  As such, we decline to address the issue. The trial court did, however, note that "no manifest injustice has occurred."  (Aug. 18, 2015 Entry at 1.)  While not necessary to our decision, we agree with the trial court and, in light of appellant's admissions at the plea hearing and in the PSI report, find no fundamental flaw in the proceedings.

## IV.  DISPOSITION

{¶ 31} For the foregoing reasons, the trial court did not err in ruling that it lacked jurisdiction, we thereby overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

————————————————